UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                    Plaintiff,

          v.                                    Case No. 17-CR-184-pp

RICHARD WALKER,

                    Defendant.

## ORDER ADOPTING RECOMMENDATION (DKT. NO. 19) AND DENYING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT (DKT. NO. 11)

On December 22, 2017, the defendant filed a motion to dismiss the indictment on the ground it fails to state a crime. Dkt. No. 11. The grand jury charged the defendant with failing to register under 18 U.S.C. §2250(a) of the Sex Offender Registration and Notification Act (SORNA) from June 2016 through July 2017; the defendant argues that he was not required to register during this time. Id. Judge Duffin recommended that this court deny the motion to dismiss. Dkt. No. 19. The defendant objected, dkt. no. 24; the court reviews the motion de novo.

## I.     Background

In 1997, the state of Colorado charged the defendant with aggravated incest of a person under ten years old; sexual assault on a child—pattern of abuse; sexual assault on a child by a person in a position of trust; and sexual assault onf a child. Dkt. No. 14-1 at 7-12. On November 10, 1998, the

1

defendant pled guilty to sexual assault of a child under Colorado Statute §18-3-405(1). Dkt. Nos. 14 at 3; 14-1 at 1. The state court sentenced him to serve four years' probation; the court revoked his probation in January of 2000, and the defendant served four years in prison. Dkt. No. 14-1 at 1.

Between 2006 and 2013, after moving to Illinois, the defendant was convicted of being a sex offender residing within 500 feet of a school; of aggravated battery; of obstruction; and of failure to register as a sex offender. Dkt. No. 3.

On October 24, 2017, the federal grand jury in this district returned a single-count indictment, alleging that beginning on or about June 19, 2016 and continuing to July 31, 2017, the defendant failed to register as a sex offender under §2250(a). Dkt. No. 1. The defendant made his initial appearance in the District of Minnesota, dkt. no. 2, and appeared before Judge Duffin on November 27, 2017 for arraignment and plea hearing, dkt. no. 4.

The defendant filed a motion to dismiss, arguing that he could not have violated §2250(a), because during the period alleged in the indictment, he was not required to register as a sex offender. Dkt. No. 11. Specifically, the defendant noted that for a person to know how long he must continue to register as a sex offender, he needs to know whether he is classified as a Tier I, Tier II or Tier III offender under SORNA; to answer that question, a court in this circuit must use what is known as the "categorical approach"—comparing the elements of the defendant's original offense of conviction with the elements

2

of a "generic" federal statute governing similar behavior. Id. at 2. The defendant argued that if the court were to apply the categorical approach in his case, it would conclude that he was a Tier I offender, subject to only a fifteen-year registration period. Id. at 5. The defendant argued that because the failure to register that gave rise to his federal indictment occurred some twenty years after his conviction, he no longer was required to register. Id.

On January 5, 2018, Magistrate Judge Duffin issued a report, recommending that this court grant the defendant's motion because the government had not opposed it. Dkt. No. 13. That same day, the government filed a response (with no explanation as to why the response was a day late). Dkt. No. 14. This court referred the motion back to Judge Duffin so that he could consider whether to accept the government's late response. Dkt. No. 15.

Judge Duffin accepted the response, and on January 29, 2018, issued a recommendation on the merits. Dkt. No. 19. Relying on authority from the Fourth and Tenth Circuits, Judge Duffin concluded that there is a limited exception to the categorical approach that allows courts to look at a particular fact outside of the elements of the offenses—specifically, the age of the victim—to determine the defendant's tier classification under SORNA. Id. at 4-5. Based on the affidavit and application for an arrest warrant filed in the Colorado prosecution, Judge Duffin concluded the government had established that the victims of the state offense were four and six years old. Id. at 5. Consequently, Judge Duffin concluded that the defendant is a Tier III offender, required to register for life. Id. at 6.

3

## II. Federal Procedural Background

### A. Standard of Review for Magistrate Judge's Recommendation

Federal Rule of Criminal Procedure 59(b) governs dispositive motion practice initiated before magistrate judgments. Parties have fourteen days to file "specific written objections" to a magistrate judge's report and recommendation on a dispositive motion. Fed. R. Crim. P. 59(b)(2). When reviewing a magistrate's recommendation, the district judge reviews *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1).

### B. Defendant's Motion to Dismiss

The defendant moved to dismiss the indictment on the ground that, as a Tier I offender, his registry requirement expired in March 2013—three years before the alleged failure to register began. Dkt. No. 24 at 1. He argued that the court must classify him as a Tier I offender, because his prior Colorado conviction was neither comparable to, nor more serious than, the "generic" offenses listed in Tiers II and III. Dkt. No. 11 at 2. The government responded

that the defendant is "at least" a Tier II offender,[1] required to register for twenty-five years after the date of his conviction. Dkt. No. 14 at 6.

C.     Recommendation

Judge Duffin began by agreeing that courts typically use a categorical approach for determining a defendant's SORNA tier status. Dkt. No. 19 at 2 (citing United States v. Taylor, 644 F.3d 573, 576 (7th Cir. 2011)). Following that approach, Judge Duffin compared the Colorado statute under which the defendant had been convicted (Colo. Rev. Stat. §18-3-405(1)) to the federal statute referenced in Tier III—18 U.S.C. §2244. Id. at 3. Judge Duffin found that the two offenses were not categorically identical:

> Walker was convicted of violating a Colorado statute that provided: "Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim." Colo. Rev. Stat. § 18-3-405(1). Obviously, the statute Walker was convicted of violating differs from 18 U.S.C. §§ 2241(c) and 2244(a)(5) with respect to the age of the victim. Sexual contact with a person who is at least 12 years old is not prohibited under 18 U.S.C. § 2244(a)(5) but a person could be convicted under the Colorado law for sexual contact with a person who is 12, 13, or 14. Thus, because the Colorado statute proscribes sexual contact with children older than those protected under 18 U.S.C. § 2244(a)(5), the offenses are not categorically identical.

Id.

Although noting that the government had not explained why the court should look to guidelines promulgated by the Attorney General (as it had

---

[1] In its response to the defendant's objection to Judge Duffin's report and recommendation, the government asserted that the defendant is a Tier III offender. Dkt. No. 25 at 9-10.

urged him to do), nor cited any cases supporting its position that the court should look beyond the statutory elements to consider the victim's age, he nevertheless did so. In taking this approach, Judge Duffin followed the lead of the Fourth and Tenth Circuits. Id. at 4. Each of these circuits applied the categorical approach, but allowed the lower court to consider the specific circumstances of the underlying conviction for the limited purpose of determining the victim's age. Id. at 4 (citing United States v. White, 782 F.3d 1118, 1133, 1134-35 (10th Cir. 2015) and United States v. Berry, 814 F.3d 192, 197 (4th Cir. 2016)). Judge Duffin discussed the rationale of this limited exception to the categorical approach over the circumstance-specific approach—the fact that determining age (unlike comparing the evidence underlying past convictions) is a "'straightforward and objective' inquiry that 'involves the inspection of a single threshold fact.'" Id. at 5.

In recommending that this court deny the motion to dismiss, Judge Duffin looked to the age of the defendant's victims, found in the underlying affidavit and application for arrest warrant supporting the Colorado conviction. Id. Because the victims were four and six years old, Judge Duffin determined that the defendant is a Tier III sex offender who committed abusive sexual contact against a minor who has not attained the age of thirteen years, 34 U.S.C. §20911(4)(A)(ii), and who thus was required to register for life, 34 U.S.C. §20915(a)(3). Id. at 6. He vacated his prior recommendation, and recommended to this court that it deny the motion to dismiss. Id.

D.     Defendant's Objection

In his objection, the defendant argued that Judge Duffin had "supplement[ed]" the categorical approach by making a factual inquiry into the victims' ages. Dkt. No. 24 at 1-2. He argued that in doing so, Judge Duffin had violated Supreme Court and Seventh Circuit precedent, both of which require lower courts to conduct a purely categorical analysis. Id. (citing Taylor, 644 F.3d at 576; Descamps v. United States, 570 U.S. 254 (2013)). The defendant also argued that the recommendation's factual findings were based on nothing more than the arrest warrant affidavit submitted by the government. Id. at 5.

## III.  Analysis

Section 2250 makes it a federal crime for any "sex offender" who is required to register under SORNA, and who travels in interstate or foreign commerce, to knowingly fail to register or update his registration. 18 U.S.C. §2250(a). Sex offenders must register in the jurisdictions in which they live, work and go to school no later than three days after changing their name, residence, employment or student status. 34 U.S.C. §§20913(a), (c). Throughout the registration period, registrants must keep their registrations current. 34 U.S.C. §20915(a).[2]

To prove that a defendant is guilty of violating §2250(a), the government must prove three elements. First, it must prove that "[t]he defendant was

---

[2] Effective September 1, 2017, the SORNA provisions located at 42 U.S.C. §16911 were relocated to 34 U.S.C. §20911. The language remains the same. The parties have cited both to the former and current statutes in their briefs. The court uses the current version.

required to register under the Sex Offender Registration and Notification Act."
Seventh Circuit Pattern Federal Jury Instructions—Criminal (2012 ed.)
(revised Feb. 2013), 18 U.S.C. § 2250(a) Failure to Register/Update as Sex
Offender—Elements. Second, it must prove that the defendant knowingly
failed either to register or to update his registration. <u>Id.</u> Finally, it must prove
that the defendant traveled in interstate or foreign commerce after failing to
register, or update his registration. <u>Id.</u>

The defendant does not argue that he is not a "sex offender," as that
phrase is defined for the purposes of SORNA. He does not dispute that at one
point in time, the law did require him to register. He does not dispute that he
traveled in interstate commerce. The defendant argues that the government
cannot prove the first element of the offense—that he was required to
register—because on the dates alleged in the indictment, his registration
period had expired.

A. <u>Threshold Issue—Is This a Question for the Court, or for a Jury?</u>

Fed. R. Crim. P. 12(b)(3)(B) allows a party to challenge a defect in the
indictment—including "failure to state an offense"—"if the basis for the motion
is then reasonably available and the motion can be determined without a trial
on the merits." Fed. R. Crim. P. 7(c)(1) requires that an indictment contain a
"plain, concise, and definite written statement of the essential facts
constituting the offense charged . . . ." "The true test of the sufficiency of an
indictment is . . . whether it contains the elements of the offense intended to

be charged." United States v. Senak, 477 F.2d 304, 306 (7th Cir. 1973)

(quoting Hagner v. United States, 285 U.S. 427, 431 (1932)).

The Seventh Circuit has noted that determining the "[f]acial sufficiency"

of an indictment "is not a high hurdle." United States v. Bates, 96 F.3d 964,

970 (7th Cir. 1996). Here, the indictment against the defendant states all three

of the elements of §2250(a). It states that the defendant was convicted of a sex

offense in 1988. Dkt. No. 1 at §2. It states that he traveled in interstate

commerce in 2016, *after* he had been convicted of that sex offense. Id. at §3.

And it states—admittedly without additional detail—that he was required to

register as a sex offender. Id. at §4. On its face, then, the indictment is valid,

because it states the elements of the crime alleged, and provides dates

sufficient to advise the defendant of the acts that the government asserts

violated the law.

Given that, it would appear to be up to the finder of fact—the jury—to

determine whether the government could prove the first element of the

charged offense beyond a reasonable doubt. A criminal defendant has a right

to "a jury determination that [he] is guilty of every element of the crime with

which he is charged, beyond a reasonable doubt." Apprendi v. N.J., 530 U.S.

466, 477 (2000) (quoting United States v. Gaudin, 515 U.S. 506, 510 (1995)).

For a jury to make this determination, however, it would have to determine

whether the defendant was required to register as a sex offender any time

between June 2006 and July 31, 2017. How would a jury make that

determination? It would have to determine the defendant's tier classification under SORNA.

The length of time that a sex offender is required to register is determined by the offender's tier status. 34 U.S.C. §20915(a). Tier I offenders must register for fifteen years, Tier II offenders for twenty-five years, and Tier III offenders for life. Id. To determine an offender's tier classification, one must compare the statute under which the offender accrued the "sex offense" with certain offenses listed in 34 U.S.C. §20911, and must determine whether the sex offense "is comparable to or more severe than" the offenses listed in that statute.

Conducting a statutory comparison to determine whether one crime is "comparable to or more severe than" another crime seems more like deciding a question of law than deciding a question of fact. Without specifically saying as much, other courts have treated it as a matter of law in the context of deciding a defendant's tier categorization for purposes of applying the Sentencing Guidelines. See, e.g., United States v. Cabrera-Gutierrez, 756 F.3d 1125 (9th Cir. 2014), cert. den., ___ U.S. ___, 135 S. Ct. 124 (2014); Taylor; White; United States v. Berry, 814 F.3d 192 (4th Cir. 2016).

The court found two cases in which a defendant had filed a motion to dismiss the indictment because he no longer was required to register as a sex offender on the date alleged. In United States v. Black, 963 F.Supp. 2d 790 (E.D. Tenn. 2013), the district did not question whether the defendant's tier classification was a question of law for the court to decide; it simply decided it.

Id. at 793-796 (concluding that the defendant was a Tier II sex offender, subject to a twenty-five year registration period, and denying the defendant's motion to dismiss the indictment). In contrast, the district court for the District of South Dakota asked the parties to brief the question. United States v. Marrowbone, 102 F.Supp. 3d 1101 (D. S.D. 2015). The parties agreed "that the tier determination of a sex offender is for the court, not a jury, to decide." Id. at 1107. The district court agreed.

The Marrowbone court described the tier classification process as one of statutory interpretation, and noted that the "general rule" was that "statutory interpretation is the court's duty." Id. The court also observed that the underlying facts of the sex offense that gave rise to a failure to register charge were not relevant to the question of guilt, but that if a jury were to decide the defendant's tier classification, it would be exposed to those underlying facts (and possibly unfairly prejudiced). Id. Finally, the Marrowbone court expressed concern that allowing juries to determine a defendant's tier classification could "result in inconsistent tier classifications for similarly situated defendants." Id. The court opined that this would be unfair, because "[d]efendants accused of the federal crime of failing to register under 18 U.S.C. § 2250 are entitled to a bright line, consistently drawn by the courts through reasoned opinions, . . . so that they may have clear notice of the duration of their registration obligations." Id.

This court agrees, and concludes that while the question of whether the defendant was required to register under SORNA normally would be a

question for a jury to determine, the court must make the legal determination of whether the defendant's tier classification required him to register on the dates in the indictment.

B. <u>Main Question—What is the Defendant's Tier Classification?</u>

An offender is a Tier I offender if he or she is not a Tier II or Tier III offender. 34 U.S.C. §20911. Tier II sex offenders include all sex offenders (other than Tier III) who committed an offense (1) punishable by imprisonment for more than one year and (2) "comparable to or more severe than" one of the federal enumerated offenses, including abusive sexual contact as described in 18 U.S.C. §2244. 34 U.S.C. §20911(3)(A)(iv). Tier III offenders include those who committed an offense (1) punishable by imprisonment for more than one year, (2) comparable to or more severe than aggravated sexual abuse or sexual abuse as described in 18 U.S.C. §§2241 and 2242 *or* abusive sexual contact as described in section 18 U.S.C. §2244, and (3) against a minor who has not attained the age of thirteen years. 34 U.S.C. §20911(4)(A)(ii). Section 2241(c) describes the offense of crossing state lines to engage in a sexual act with a person who has not attained the age of twelve years. Section 2244 cross-references with §§2241, 2242, 2243 and 2244.

1. *Colorado Statute: Sexual Assault on a Child*

In 1998, the defendant pled guilty to sexual assault on a child under Colorado statute §18-3-405(1):

> Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of aget and the actor is at least four years older than the victim.

Colo. Rev. Stat. §18-3-405(1) (1990 Main Volume). Such a violation constituted a felony under Colorado law. Id. at 405(2). Under the Colorado statute, the defendant could not argue lack of knowledge of the victim's age as a defense:

> If the criminality of conduct depends on a child's being below the age of fifteen, it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be fifteen years of age or older.

Colo. Rev. Stat. §18-3-406(2) (1990 Main Volume).

The government argued that the statute under which the defendant was convicted was categorically comparable to the Tier II sex offenses listed in SORNA. Dkt. No. 14 at 5. For the defendant to qualify as a Tier II sex offender, his underlying offense of conviction had to be a felony (it was), and it had to be "comparable" to certain enumerated federal sex offenses, the most similar being abusive sexual contact in violation of 18 U.S.C. §2244. 34 U.S.C. §20911(3).

## 2. *Comparable statutes*

One next must look to whether the Colorado statute under which the defendant was convicted is "comparable" to 18 U.S.C. §2244. Section 2244(a) says that anyone who knowingly engages in sexual contact with another person is guilty of abusive sexual contact if the defendant's actions would violate any of several *aggravated* sexual abuse statues had those actions constituted sex *acts*, instead of sexual *contact*. The statutes listed in §2244(a)

are 18 U.S.C. §2241, aggravated sexual abuse; 18 U.S.C. §2242, sexual abuse; and 18 U.S.C. §2243, sexual abuse of a minor or ward.

### a. §2241

Section 2241—specifically, subsection (c), which is the portion of the statute that addresses aggravated sexual abuse of children—prohibits a person from knowingly engaging in a sexual act with someone who has not attained the age of twelve years. To prove a violation of §2241(c), the government is not required to prove that the defendant knew that the victim was under the age of twelve. 18 U.S.C. §2241(d).

### b. §2242

Section 2242(2)(A) prohibits a person from engaging in a sexual act with a person who is "incapable of appraising the nature of the conduct." The statute does not allow lack of knowledge as a defense.

### c. §2243

Section 2243(a) prohibits a person from knowingly engaging in a sexual act with someone who has reached the age of twelve, but has not yet reached the age of sixteen, and is at least four years younger than the defendant. In contrast to §2241, however, it is a valid defense to a §2243 charge "that the defendant reasonably believed that the other person had attained the age of 16 years." 18 U.S.C. §2243(c)(1).

SO: the Colorado statute prohibits sexual contact with children less than fifteen years old; §2241(c) prohibits sexual contact with victims under twelve; §2242(2)(A) prohibits sexual contact with someone who is incapable of

appraising the nature of the conduct; and §2243(a) prohibits sexual contact with victims between the ages of twelve and sixteen, if the defendant is at least four years older than the victim. Additionally, it is no defense to a violation of the Colorado statute that the defendant may have believed the victim was over the age of fifteen. It is no defense to a violation of §2241(c) that the defendant may have believed that the victim was over the age of twelve. It *is* a defense to §2243 that the defendant believed the victim to be over the age of sixteen. The parties agree that the statutes are not identical. But SORNA does not require that they be "identical." It requires that they be "comparable." The next question, then, is how the court goes about determining whether the Colorado statute is "comparable" with any of the above statutes.

3.      *Approaches*

Courts use one of three approaches to compare statutes. The categorical approach requires the comparing court to focus only the elements of the crime, without considering or looking at the facts underlying the original conviction. See Taylor v. United States, 495 U.S. 575, 588-89 (1990). Where the statute under which the defendant was convicted "sweeps more broadly than the generic crime," the underlying conviction does not categorically match the generic crime. Descamps, 570 U.S. at 261 (addressing the categorical approach in the context of the Armed Career Criminal Act).

The modified categorical approach allows a court to use the categorical approach when a defendant's prior conviction involved a divisible statute— that is, a statute that "sets out one or more elements of the offense in the

alternative." Id. at 257. In cases involving divisible statutes, courts can look to certain documents, such as the indictment, plea or jury instructions, to determine which alternative formed the basis of conviction. Id.

Finally, under the circumstance-specific approach, the court focuses on the facts, rather than the elements, of the prior conviction. See Nijhawan v. Holder, 557 U.S. 29, 34 (2009).

### 4. *Application of the Categorical Approach*

The defendant asserts, and the government does not dispute, that the Seventh Circuit has used the categorical approach to compare statutes in this context. In Taylor, the Seventh Circuit said that district courts "usually" determine an offender's tier classification for the purposes of SORNA by using the categorial approach. Taylor, 644 F.3d at 576 (citing United States v. Smith, 544 F.3d 781, 786 (7th Cir. 2008); Begay v. United States, 553 U.S. 137, 141 (2008)).

In his motion to dismiss the indictment, the defendant argued that the court should compare the elements of the Colorado statute to the elements of §2243(c). Dkt. No. 11 at 4. He asserted that the Colorado statute was not a "categorical" match with §2243(c), because the Colorado statute criminalized sexual conduct with someone under the age of fifteen regardless of whether that person believed the victim to be fifteen or older, while the federal statute did not criminalize the conduct if the defendant believed the victim was "of age." Id. at 4-5.

In its response, the government did not directly address this argument. Instead, it compared the Colorado statute with §2241(c)—which prohibits sexual contact with a person who has not attained the age of twelve—and quoted subsection (d), which states that the government is not required to show that the defendant did not know that the victim had not attained the age of twelve to prove a violation. Dkt. No. 14 at 5-6.

The defendant replied that by asking the court to compare the Colorado statute to §2241(c), the government was asking the court to use "the victim's age, not the statute of conviction," to determine the defendant's tier level. Dkt. No. 18 at 2.

Before Judge Duffin, neither party undertook a direct comparison of the Colorado statute with all three of the offenses listed in §2244. Before wading into the weeds of the issues the parties have raised in response to Judge Duffin's recommendation, the court will undertake that comparison.

a. §2241(c)

The Colorado statute prohibits sexual contact with a victim "less than fifteen years of age," if the actor is at least four years older than the victim. There is no defense for believing that the victim was fifteen or older. So the Colorado statute captures anyone who has sexual contact with a person under the age of fifteen, as long as that person is at least four years older than the victim.

Section 2241(c) prohibits sexual contact with a victim who has not attained the age of twelve. Like the Colorado statute, there is no defense for

believing that the victim was fifteen or older. So §2241(c) captures anyone who has sexual contact with someone who has not attained the age of twelve.

If the Colorado statute "sweeps more broadly"—criminalizes a broader category of conduct—than the federal statute, <u>Descamps</u>, 570 U.S. at 261, it cannot serve as a predicate offense for Tier II (or Tier III) classification. Does the Colorado statute capture more conduct than §2241(c)? The answer would be an unqualified "yes" if it stopped at prohibiting sexual contact with anyone under the age of fifteen, because it would capture every defendant captured by the federal statute plus defendants who had sexual contact with thirteen- and fourteen-year-olds. But the requirement that the defendant be at least four years older than the victim narrows the reach of the Colorado statute. While the federal statute would capture a fourteen-year-old who had sexual contact with an eleven-year-old, the Colorado statute would not. On the other hand, the Colorado statute would capture an eighteen-year-old who had sexual contact with a thirteen-year-old; the federal statute would not.

Simply looking at the elements of the two statutes, then, one cannot tell whether the Colorado statute sweeps more broadly then the federal statute.

### b. §2242(2)(A)

Section 2242(2)(A) prohibits a person from knowingly engaging in sexual contact with someone who is incapable of recognizing the nature of the conduct.

Neither party compared the Colorado statute with this one, despite the fact that this is one of the offenses listed in §2244. The relevant portion of the

statute—18 U.S.C. §2242(2)(A)—forbids engaging in a sexual act with someone who is "incapable of appraising the nature of the conduct." The Seventh Circuit has held that this statute provides that "[k]nowingly engaging in a sexual act with a person under the age of 18 amounts to a crime . . . when the juvenile is incapable of appraising the nature of the act . . . ." United States v. Julian, 427 F.3d 471, 479-80 (7th Cir. 2005).

This statute appears to be very broad. It places no age limitation on the victim. It requires no age differential between the offender and the victim. It arguably applies to a larger universe of victims than either the Colorado statute or the other federal statutes—children who, by virtue of age, are incapable of understanding the nature of sexual conduct; adults with cognitive disabilities; adults who are incapacitated due to drugs or alcohol; seniors with cognitive impairment. While the court could find little case law involving the statute, it found several instances in which a defendant had been charged both with sexual abuse of a child under 18 U.S.C. §2241(c) and sexual abuse of a victim under §2242(2)(A), implying what seems logical—that a child so young is incapable of understanding the nature of the sexual act. See, *e.g.*, United States v. Britt, 576 Fed. App'x 959 (11th Cir. 2014); United States v. Burke, 80 F.3d 314 (8th Cir. 1996); United States v. Medicine Horse, Case No. CR-11-35, 2012 WL 1999525 (D. Mont. June 4, 2012).

The statute does not define what it means to be "incapable of appraising the nature" of the conduct. But if one assumes that children under the age of fifteen are "incapable of appraising the nature" of sexual contact/assault, then

19

§2242(2)(A) appears to be much broader, and to encompass far more behavior, than the Colorado statute. And if that is the case, then the Colorado statute is a categorical match with §2242(2)(A).

The Seventh Circuit Pattern Jury Instructions provide that the government must prove three elements to prove a charge under §2242(2)(A): (1) that the defendant knowingly engaged in sexual contact, (b) that the victim was incapable of recognizing the nature of the conduct, and (c) that the defendant's actions took place in the United States or its jurisdictions. Seventh Circuit Pattern Federal Jury Instructions—Criminal, 18 U.S.C. §2244(a)(2)[3] Abusive Sexual Contact—Incapacitated Victim—Elements (2012 ed.) (Revised 2013).

Both statutes, then, require the defendant to knowingly have sexual contact. The Colorado statute requires that the victim be under age fifteen and the defendant be more than four years older than the victim, while the federal statute requires only that the victim was incapable of recognizing the nature of the conduct. Looking at the requirements of the two statutes, as the categorical approach requires, it appears to this court that the Colorado statute penalizes a subset of the conduct penalized by §2242(2)(A), and thus that it is a categorical match.

---

[3] The title of this instruction is puzzling. Section 2244(a)(2) simply punishes any "sexual contact" that would violate §2242(2)(A) had it been a sexual act. The preceding instruction is captioned "18 U.S.C. § 2244(a), 2242 Abusive Sexual Contact – Elements," but it provides the elements for a violation of §2242(1) only. It appears that the jury instruction committee may have left out of the caption of this instruction the reference to §2242(2)(A).

c.    §2243(a)

Finally, §2243(a) prohibits sexual contact with a person who has attained the age of twelve, but has not yet reached the age of sixteen, if the defendant is at least four years older than the victim. The federal statute, unlike the Colorado statute, provides a defense if the defendant can establish by a preponderance of the evidence that he or she reasonably believed that the victim was sixteen or older.

It appears that §2243(a) criminalizes less conduct than the Colorado statute. It places a minimum age limit on victims—the victim must be at least twelve for the federal statute to apply—while the Colorado statute reaches all victims who are younger than fifteen. It also provides that, regardless of the victim's age, the defendant has a defense if he or she can demonstrate a reasonable belief that the victim had reached the age of sixteen. It does not appear that §2243(a) is a categorical match for the Colorado statute.

5.    *Further Considerations*

The court has concluded that the Colorado statute is a categorical match for 18 U.S.C. §2242(2)(A). That means that the defendant is at least a Tier II offender under SORNA, because his state offense was a felony, and was comparable to or more severe than §2242(2)(A).

While the parties did not provide Judge Duffin with categorical comparisons of the statutes listed in §2244, the defense argued to the judge that the government's suggestion that Judge Duffin look to the age of the defendant's victims (implied at Dkt. No. 14 at p. 5) amounted to an invitation

that Judge Duffin go beyond the categorical approach. The defense argued that by urging Judge Duffin to look at the underlying facts of the defendant's conviction—the age of his victims, in particular—the government was asking the court to ignore Seventh Circuit precedent. Dkt. No. 18 at 2-4 (citing Taylor, 644 F.3d at 576).

Even though the government had not provided any authority for its argument, Judge Duffin found two circuit-level cases in which the courts concluded, for the purposes of determining the defendant's tier level to calculate his federal sentencing guideline range, that courts may depart from the categorical approach for the limited purpose of determining the age of the defendant's victims. Dkt. No. 19 at 4-6 (citing White and Berry). Judge Duffin found the reasoning in those decisions persuasive, and in deciding that the Colorado conviction was a categorical match, looked at the affidavit in support of the search warrant and the application for the warrant to determine the age of the defendant's victims. Dkt. No. 19 at 5.

This conclusion formed the basis of the defendant's objection to Judge Duffin's recommendation. The defendant argued that Judge Duffin should not have followed the reasoning of the Tenth and Fourth Circuits, because to do so would "undermine the function of a jury, deprive[] defendants of the benefit of their plea bargains, and require[] evidentiary findings and further litigation." Dkt. No. 24 at 5. He also argued that the White and Berry decisions were contrary to the Supreme Court's decisions in Taylor and Descamps. Id.

The government responded that it was necessary for courts to look at the ages of the defendant's victims to determine his tier application. Dkt. No. 25 at 8. It also responded that, contrary to the defendant's assertion, there was Seventh Circuit support for Judge Duffin's position. Id. at 10-11. While the defendant filed a detailed reply, he did not address the government's assertion that there was Seventh Circuit support for looking at the ages of the victims of the defendant's underlying offense. Dkt. No. 30.

Because this court has concluded that the Colorado conviction is a categorical match, it will deny the defendant's motion to dismiss the indictment. The fact that the defendant is at least a Tier II offender under SORNA means that he was required to register for at least twenty-five years after the date of the Colorado conviction—that is, until 2023. This means that the defendant was under a statutory obligation to register between June 2006 and July 2017, the dates alleged in the indictment. That decision resolves the pending motion.

But this does not resolve the question of the defendant's SORNA tier classification. If the defendant either pleads guilty or is convicted after a trial, the question of whether he is a Tier II or Tier III offender under SORNA becomes relevant. Section 2A3.5 of the sentencing guidelines governs failure to register convictions under §2250(a). It requires a person trying to calculate a defendant's base offense level to determine the defendant's tier classification: the base offense level is 16 for a Tier III offender, 14 for a Tier II offender and

12 for a Tier I offender. U.S.S.G. §2A3.5(a). The government is correct that the Seventh Circuit has spoken on the issue in the sentencing context.

In Taylor, the court began by noting that in trying to determine a defendant's classification under SORNA, the trial judge "usually accomplishes this task by examining the elements of the statute under which the defendant was convicted." Taylor, 644 F.3d at 576. The problem in the Taylor case, however, was that Taylor was convicted under a military statute that prohibited sodomy "in all its forms"—consensual, forcible or involving a child. Id. The trial judge had examined the state court charging document to determine the type of sodomy of which Taylor had been convicted; Taylor argued that in doing so, the sentencing judge had committed reversible error by using a "modified categorical approach." Id.

The Seventh Circuit observed that it previously had held "that when a statute proscribes multiple types of conduct, some of which would constitute a violent felony and some of which would not, a judge may examine a 'limited range of additional material' in order to determine whether the defendant pleaded guilty to the portion of the statute that constitutes a violent felony." Id. (citations omitted). The court applied that same rationale to Taylor's situation. It concluded that, because the statute under which Taylor had been convicted prohibited all forms of sodomy, it was "impossible to determine from the face of the statute whether Taylor pleaded guilty to forcible sodomy, consensual sodomy, or sodomy of a child." Id. at 576-77. The court observed that if one hewed to the pure categorical approach, forcible sodomy

convictions under the statute of which Taylor was convicted always would qualify as Tier I sex offenses, despite the fact that the statute prohibited different degrees of conduct. Id. at 577. Because Taylor was convicted under a statute that prohibited multiple kinds of conduct, the court affirmed the district court's decision to look beyond the elements of the military offense, and held that "a judge may examine a limited set of additional materials— such as the charging instrument in this case—to determine" which portion of the statute comprised the offense of conviction. Id. at 577.

Taylor involved an underlying sex offense statute that prohibited multiple kinds of conduct; this case does not. But more recently, the Seventh Circuit discussed the "elements-centric" categorical approach in United States v. Rogers, 804 F.3d 1233 (7th Cir. 2015). In Rogers, the defendant challenged the district court's application of a sentencing enhancement under U.S.S.G. §2A3.5(b)(1)(A), which requires the sentencing court to enhance the defendant's base offense level by 6 if he committed a "sex offense" while in failure-to-register status. Id. at 1235. The sentencing court found that while on failure-to-register status, Rogers had committed incest under Indiana law. Id. at 1236. To decide whether to apply the sentencing enhancement, the district court had to determine whether incest under Indiana law was a "sex offense" under SORNA, and whether that offense fell within a limited exception to SORNA's definition of "sex offenses" which provides that *consensual* sex offenses are not "sex offenses" for SORNA purposes if the victim was at least thirteen years old and the offender was not more than four years older than

25

the victim. Id. (citing 34 U.S.C. §20911(5)(c)). The defendant asked the district court to apply the categorical approach, and argued that incest under Indiana law was not a categorical match because it did not include non-consent as an element. Id.

The Rogers court described what the defendant was requesting as "the 'elements-centric' categorical approach." Id. The court explained that this approach "applies when the statute in question speaks in categorical or elements-based terms rather than 'circumstance specific' terms." Id. (quoting Nijhawan, 557 U.S. at 36). As an example of this kind of statute, the court pointed to the Armed Career Criminal Act, which increases the sentence "of a defendant who has three 'previous convictions' for a violent felony—not a defendant who has thrice committed such a crime." Id. (citing Descamps, 570 U.S. at 267). The court held that in such a circumstance, Congress intended the court "to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions." Id. (quoting Descamps, 570 U.S. at 267).

The Seventh Circuit applied that "elements-centric" categorical approach to determine whether Rogers's incest offense qualified as a "sex offense" under SORNA; it pointed out that the very definition of a "sex offense" under SORNA required the court to determine whether the underlying offense had "an element" involving a sexual act or sexual contact. Id. at 1237 (citing 34 U.S.C. §20911(5)(A)(i)).

The more difficult question, however, was whether incest under Indiana law fell into SORNA's exception for consensual sex offenses where the victim was at least thirteen and the perpetrator was no more than four years older than the victim. Id. The court observed that the exception used "fact-specific language, strongly suggesting that a conduct-based inquiry applies." Id. The exception, the court pointed out, "contains a string of fact-based qualifiers: '*if* the victim was an adult,' '*unless* the adult *was under* the custodial authority of the offender *at the time* of the offense,' '*if the victim was* at least 13 years old and *the offender was not* more than 4 years older than the victim.'" Id. (quoting 34 U.S.C. §20911(5)(C) (emphasis in the original). The court found that this language did not refer to the *elements* of the offense, but to the specific *facts* of the offense, and thus, that the categorical approach did not apply to determine whether the exception applied. Id. (emphasis added).

The government made no mention of Rogers in its objection to the defendant's motion to dismiss the indictment. Dkt. No. 14. Judge Duffin did not discuss it in his report and recommendation. Dkt. No. 19. The defendant has not addressed Rogers anywhere in his pleadings.

Arguably, the Seventh Circuit's reasoning in Rogers signals that in a case such as this one, the Seventh Circuit might apply the categorical approach to the question of whether the defendant is a "sex offender"—one who was convicted of a "sex offense"—but would apply a conduct-based approach to the question of whether the defendant is a Tier II or Tier III offender for sentencing purposes. The major difference between a Tier II and

Tier III offender is the age of the victim; to qualify as Tier III offender, the victim must have been under the age of thirteen.

Arguably, the Seventh Circuit might view the under-thirteen requirement for Tier III offenders as one of those "qualifiers" that implies a need to look at the actual age of a defendant's victim. While the Tenth Circuit in <u>White</u> relied on SORNA's legislative history and the reasoning in other cases to reach its conclusion that a sentencing court could look at a defendant's age to determine tier classification, it hinted at some of the same reasoning used by the <u>Rogers</u> court. It noted that, while a categorical approach to whether one is a sex offender "gives the defendant most of the benefits of a plea bargain, strictly confines the need to consult documents from a prior proceeding, and avoids the inequity of relying on allegations of the indictment where the defendant may have had no reason to challenge those assertions," "a victim's age is a single fact that is easy to prove and, in an ordinary case, not easily disputed." <u>White</u>, 782 F.3d at 1135. The Fourth Circuit came to the same conclusion in <u>Berry</u>. <u>Berry</u>, 814 F.3d at 197.

In objecting to this reasoning, the defendant has urged the court to focus on the relationship between two Supreme Court cases: <u>Nijhawan</u> and <u>Moncrieffe v. Holder</u>, 569 U.S. 184 (2013). <u>Nijhawan</u> involved the question of whether the defendant's conviction for conspiracy to commit various frauds that did not require a finding of any particular monetary loss amount qualified his conviction as an "aggravated felony" which made him subject to removal. <u>Nijhawan</u>, 557 U.S. at 32-33. The definition of an "aggravated felony" included

a requirement that the loss amount exceed $10,000. Id. at 32. The Supreme Court found that the "aggravated felony" statute "contains some language that refers to generic crimes and some language that almost certainly refers to the specific circumstances in which a crime was committed." Id. at 38. The Court found that the portion of the statute that required loss of over $10,000 was "consistent with a circumstance-specific approach." Id.

In Moncrieffe, the Court considered whether the petitioner's conviction for possession of marijuana with intent to distribute under Georgia law constituted an "aggravated felony" for the purposes of deportation under the Immigration and Nationality Act. Moncrieffe, 569 U.S. at 188-89. The Supreme Court began with the categorical approach, noting that it had a "long pedigree in our Nation's immigration law." Id. at 190-91. The Court compared Moncrieffe's Georgia conviction to a conviction under the generic federal crime of 21 U.S.C. §841(a)(1). Id. at 192-93. The Court noted that the federal statute certainly made it illegal to possess marijuana with intent to distribute it—the crime for which Moncrieffe had been convicted in Georgia. Id. at 192. But, the Court observed, the federal statute had another component—one that provided that if the defendant violated the statute by distributing only a small amount of marijuana for no remuneration, he must be convicted of a misdemeanor. Id. at 193-94. Accordingly, the Court found, the only way to know whether possession with intent to distribute marijuana constitutes a felony under the federal law is to know whether the defendant sold a small amount, and whether he got paid. Id. The Court concluded that Moncrieffe's

conviction could correspond to either a felony conviction or a misdemeanor offense under §841. For that reason, the Court found that Moncrieffe had not been convicted of an aggravated felony under the Immigration and Nationality Act (INA). Id. at 194-95.

The Nijhawan approach is similar to the approach the Seventh Circuit used in Rogers. In fact, the Seventh Circuit pointed to the reasoning in Nijhawan in support of its distinction between the kinds of statutes requiring an "elements-centric" approach and the kinds containing "circumstance specific" language. Rogers, 804 F.3d at 1236 (citing Nijhawan, 557 U.S. at 36). The defendant, however, argues that in Moncrieffe, the Supreme Court "rejected the proposed expansion of the circumstance-specific inquiry beyond loss amount." Dkt. No. 24 at 8. The defendant also argues that Nijhawan involved a civil proceeding—deportation—where the government was required to meet only a clear and convincing evidence standard, rather than the more stringent reasonable doubt standard applicable in criminal cases. Id. at 9. Thus, the defendant argues, it would be unfair to use the circumstance-specific approach articulated in Nijhawan to determine a sex offender's SORNA tier based on facts that have not been proven beyond a reasonable doubt. Id.

The defendant's assertion that the Moncrieffe Court limited Nijhawan to statutes involving monetary loss amounts reads Moncrieffe too broadly. The Moncrieffe Court explained that the $10,000 monetary threshold in the INA was a "limitation, written into the INA itself, on the scope of the aggravated felony for fraud." Moncrieffe, 569 U.S. at 202. Congress had set off the

30

$10,000 monetary provision by the words "in which," "which calls for a circumstance-specific examination of 'the conduct involved "*in*" the commission of the offense of conviction.'" Id. (quoting Nijhawan, 557 U.S. at 39)). The Moncrieffe Court stated that "[l]ocating this exception in the INA proper suggests an intent to have the relevant facts found in immigration proceedings." Id. In contrast, the Court found that the INA contained no such limiting factor on aggravated felonies for drug offenses; instead, the INA had "incorporate[d] other criminal statutes wholesale," and that in that circumstance, the INA "must refer to generic crimes," subject to the categorical approach. Id.

Moncrieffe did not, contrary to the defendant's assertions, confine or limit Nijhawan's use of the circumstance-specific approach to offenses involving monetary loss. Rather, it considered the role of the monetary loss requirement in the structure of the INA's "aggravated felony" requirement, compared with the role of drug offenses in that "aggravated felony" requirement. Being convicted of fraud, by itself, was not enough to constitute an "aggravated felony" under the INA; if one had been convicted of fraud, but the loss did not exceed $10,000, one had not committed an aggravated felony under the INA. The same reasoning applies here. If the defendant was not convicted either of abusive sexual contact with a minor who has not yet attained the age of twelve years, or of abusive sexual contact with a minor who had attained the age of twelve but was not yet sixteen, and was not at least four years older than the victim, then he does not qualify as a Tier II offender.

31

One must know the age of the victims in order to make that determination—just as one must know the amount of loss in the fraud in order to determine whether someone has committed an aggravated felony for purposes of the INA.

The defendant also argues that the <u>Nijhawan</u> Court's use of the circumstance-specific approach is not appropriate in his case, because the petitioner in <u>Nijhawan</u> was a civil litigant facing a civil penalty—deportation—not a criminal defendant facing the loss of liberty in a criminal prosecution. The petitioner in <u>Nijhawan</u> had argued that the Supreme Court ought to "insist that a jury verdict, or a judge-approved equivalent, embody a determination that the loss involved in a prior fraud or deceit conviction amounted to at least $10,000." <u>Nijhawan</u>, 557 U.S. at 41. The Supreme Court rejected the "evidentiary limitations" the petitioner proposed. <u>Id.</u> The Court first noted that no prior law supported the petitioner's request, and that it could "prove impractical insofar as it requires obtaining from a jury a special verdict on a fact that . . . is not an element of the offense." <u>Id.</u> at 42. The Court also pointed out a fact upon which the defendant in this case seizes: that "a deportation proceeding is a civil proceeding in which the Government does not have to prove its claim 'beyond a reasonable doubt.'" <u>Id.</u>

The defendant here argues that if this court were to use the circumstance-specific approach to look to the age of the victims, it would be "extend[ing] judicial fact finding beyond the recognition of a prior conviction, and rely[ing] on its own finding about a non-elemental fact to enhance penalties." Dkt. No. 30 at 3. This argument relates in some respect to the

defendant's argument that the documents on which Judge Duffin relied to learn the age of the defendant's Colorado victims—the affidavit and application for the defendant's arrest warrant—are not reliable. But that is an issue that the defendant can raise at sentencing. As the parties are aware, while the court will have to calculate the defendant's tier classification to calculate his guideline range, the guidelines are no longer mandatory for just the reasons that the defendant argues. The defendant will have the opportunity to dispute the government's evidence that the defendant is a Tier III offender at the time of sentencing, if the case gets that far. He also will have the opportunity to argue that, even if the court determines that the defendant is a Tier III offender, the court should not impose a sentence within the advisory sentencing range.

## IV.    Conclusion

The court concludes that the defendant's Colorado conviction is a categorical match with one of the statutes enumerated in SORNA, and thus that he is at least a Tier II sex offender. He was required to register during the period stated in the indictment.

The court **OVERRULES** the defendant's objection to Magistrate Judge Duffin's report and recommendation. Dkt. No. 24.

The court **ADOPTS** Judge Duffin's recommendation. Dkt. No. 19.

The court **DENIES** the defendant's motion to dismiss. Dkt. No. 11.

The court will contact the parties to set up a status conference, to discuss further scheduling.

Dated in Milwaukee, Wisconsin this 6th day of July, 2018.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**